**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CEPIA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No. _____** |
| | ) | |
| **ALIBABA.COM** | ) | |
| **HONG KONG LIMITED,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **ALIBABA GROUP HOLDING** | ) | |
| **LIMITED,** | ) | |
| | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Cepia, LLC ("Cepia"), for its Complaint against Alibaba.com Hong Kong Limited and

Alibaba Group Holding Limited, states as follows:

## NATURE OF THE ACTION

1.      This is an action seeking preliminary and permanent injunctive relief, monetary

damages, and other appropriate remedies arising from Alibaba's willful violation of Cepia's

rights including direct and contributory trademark infringement, trade dress infringement, false

advertising, false designation of origin, copyright infringement, unfair competition, and dilution.

## THE PARTIES

2.      Cepia is a limited liability company incorporated under the laws of Missouri with

its principal place of business in St. Louis, Missouri.

3.        Cepia is in the business of developing, manufacturing, and selling innovative toys, including the "ZhuZhu Pets" toy line that is the subject of this lawsuit.

4.        Upon information and belief, Alibaba.com Hong Kong Limited is a Hong Kong corporation with its principal place of business at 25/F Jubilee Centre, 18 Fenwick Street, Wanchai, Hong Kong.

5.        Upon information and belief, Alibaba Group Holding Limited is a Cayman Island corporation with its principal place of business located in Hong Kong.

6.        Upon information and belief, Alibaba Group Holding Limited is a majority shareholder of Alibaba.com Hong Kong Limited.

7.        Alibaba Group Holding Limited owns the domain name for the website located at www.alibaba.com.

8.        Alibaba Group Holding Limited owns the United States registrations for the "Alibaba" trade names and trademarks that are used and displayed on the Alibaba Website.

9.        Upon information and belief, Alibaba Group Holding Limited licenses the right to use the www.alibaba.com domain name and the "Alibaba" trademarks to Alibaba Hong Kong Limited, for the purposes of operating and controlling the Alibaba Website, along with the goods and services provided on the Alibaba Website.

10.       Upon information and belief, Alibaba Hong Kong Limited and Alibaba Group Holding Limited (together, "Alibaba") own, control and/or operate a well known network of Internet websites, including a global trade platform for importers and exporters (the "Alibaba Website"), a transaction-based wholesale marketplace (www.aliexpress.com) designed for buyers seeking fast shipment of small quantities of goods (the "AliExpress Website"); a Chinese platform for domestic trade in China (www.1688.com); a Japanese platform facilitating trade to

and from Japan (www.alibaba.co.jp); and the largest online retail website in China, (www.taobao.com).

11.     Alibaba claims that its network of Internet marketplaces hosts over 56 million registered users in more than 240 countries and regions.

12.     The Alibaba Website is an English-language business-to-business (or "B2B") marketplace designed to connect buyers and sellers of a wide variety of products throughout the world.

13.     Alibaba promotes the Alibaba Website as "the world's largest B2B marketplace."

14.     The Alibaba Website connects wholesale buyers and sellers of a wide variety of products in over forty broad categories, such as appliances, office supplies, automobiles, chemicals, apparel, house wares, furniture, and toys.  Almost every consumer product imaginable is available for purchase on the Alibaba Website.

15.     The AliExpress Website connects wholesale and other buyers to sellers in a wide variety of consumer products for express fulfillment and shipment.

16.     The Alibaba and AliExpress Websites each contain a link to the other website on their home pages.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over Cepia's claims for trademark infringement, false advertising, unfair competition, false designation of origin and dilution pursuant to 28 U.S.C. §§ 1331 and 1338(a) as a case arising under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and pendant jurisdiction over the claims for state law infringement, unfair competition, damage to business reputation and unjust enrichment pursuant to 28 U.S.C. §1338(b) because those claims are joined with substantially related federal claims.

3

18.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Cepia and Alibaba are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

19.     Alibaba does business throughout the world, including within this judicial district.

20.     Alibaba is devoted to marketing its many websites and expanding its presence in the United States, including this judicial district[1].  Upon information and belief, Alibaba controls and/or is associated with a United States entity, Alibaba.com, Inc., that is devoted to marketing and expanding the reach of the Alibaba and AliExpress Websites in the United States.

21.     Individual(s) and entity(ies) throughout the United States, including within this judicial district, have used and will continue to use the Alibaba and AliExpress Websites to buy and sell goods.

22.     Any user of the Internet, including those located within this judicial district, can access the Alibaba and AliExpress Websites in order to browse for goods, purchase goods and contact suppliers of goods.

23.     The Alibaba and AliExpress Websites allow users to purchase goods from suppliers that are located within this judicial district.

24.     At all relevant times, the Alibaba and AliExpress Websites have allowed buyers and sellers throughout the United States, including those located within this judicial district, to create personalized accounts for use on the Alibaba and AliExpress Websites.

25.     After creating a personalized account, a user can log on to the Alibaba Website in order to post goods for sale, browse for goods, request customized sourcing for goods, access the

---

[1] In July of 2010, Alibaba acquired Vendio Services, Inc., a transaction that, according to Alibaba, allowed Alibaba to gain access to more than 80,000 targeted small businesses in the United States.  In August of 2010, Alibaba acquired Auctiva Services, Inc., a United-States based Internet company with over 170,000 users that provides listing, marketing, hosting, and management services for online storefronts.

4

AliExpress Website, place orders for goods, track orders of goods, interact with other buyers/sellers and update or review listed product information.

26.     In addition, the Alibaba Website features interactive, community-based forums that allow users to review and share information, submit questions regarding the marketplace, post on message boards, learn about trade shows occurring throughout the world, monitor prices of certain goods and learn about various industries through an online encyclopedia.

27.     Alibaba's actions, as set forth herein, have harmed and will undoubtedly do further harm to Cepia, a corporation located within this judicial district.

28.     This Court has personal jurisdiction over Alibaba by virtue of its doing business and substantial contacts within this judicial district, along with its commission of tortious and/or infringing acts inside and outside of this judicial district, that have an effect within this judicial district.

29.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTS APPLICABLE TO ALL COUNTS

**A.     Cepia's Toy Line**

30.     Cepia is a small, family-run business that prides itself on developing innovative toys for children.

31.     In or around 2008, Cepia conceived the idea of a unique toy line featuring motorized animals that would move and make random noises on their own (the "ZhuZhu Pets$^{®}$ Toy Line").

32.     Cepia expended considerable time, money and effort in developing its ZhuZhu Pets$^{®}$ Toy Line, including, without limitation, expending time, money and effort relative to the design, programming, construction, and production of the initial offering of toys and planned

5

extensions of the line; product testing and approval; development of a marketing strategy and marketing materials; focus group studies; and sales efforts.

33.     The ZhuZhu Pets® Toy Line was launched in retail stores nationwide throughout the United States under the brand name "ZhuZhu Pets®" in the late summer/early fall of 2009.  A depiction of the 2009 toy line is attached hereto as Exhibit 1.

34.     The initial ZhuZhu Pets® Toy Line featured a collection of unique, intelligent motorized hamsters, each having their own name and personality (e.g., "Pipsqueak," "Mr. Squiggles," "Num Nums"), in addition to various play sets and accessories for the hamsters.

35.     The ZhuZhu Pets® Toy Line was an immediate and phenomenal success in the marketplace with record sales for the 2009 Christmas selling season.  The toy line was widely recognized by third parties in the news, on the Internet, in social media circles and via other forms of communication as one of the "hottest toys" of the year.

36.     The ZhuZhu Pets® Toy Line was also recognized as the "Toy of the Year," the "Girl Toy of the Year" and the "Most Innovative Toy of the Year" for 2009 by the Toy Industry Association.

37.     The ZhuZhu Pets® name, logo, packaging, and product depictions have been promoted heavily by Cepia through television and print advertising, as well as Internet and social media promotional activities.

38.     After initial introduction into the United States, Cepia expanded sales of the ZhuZhu Pets® Toy Line via distribution networks throughout much of Europe, Asia, Australia, New Zealand, and North and South America.

6

39.     Cepia also expanded the ZhuZhu Pets® Toy Line to include a wide array of animal characters, play sets and accessories, some of which are sold under sub-brands such as ZhuZhu Princess™, ZhuZhu Babies™ and ZhuZhu Puppies™.

40.     Cepia has also introduced new "combat" hamsters and related play sets and accessories intended to appeal to boys under the name "Kung Zhu®."

41.     Both the ZhuZhu Pets® and Kung Zhu® brands fall under the umbrella of Cepia's Zhu-niverse™ brand of toys.  It is anticipated that additional products and brands will be added over time.

42.     Cepia is licensing rights to the ZhuZhu Pets®, Kung Zhu®, and Zhu-niverse™ brands for a variety of products, including clothing, bedding, and stationery.

43.     In the safety-conscious children's toy market, Cepia manufactures, promotes, and distributes its products in a highly controlled manner so that parents can rely on the "ZhuZhu Pets®" brand name as an indicator of the quality and safety of Cepia products.

44.     Cepia's products are produced by a select group of manufacturers who manufacture the products exclusively for Cepia.  Finished products are distributed directly to retailers by Cepia and to a limited group of authorized distributors throughout the world.

45.     Cepia authorizes the sale of its Zhu-niverse brand of toys at wholesale, including the ZhuZhu Pets® Toy Line, only through contractual relationships with authorized distributors.

**B.     Cepia's Registered Trademarks and Copyrights**

46.     Cepia is the owner of all right, title and interest in and to United States Trademark Registration No. 3,808,405 issued June 22, 2010 for the mark "ZhuZhu Pets", which registration is valid and subsisting on the Principal Register of the United States Patent and Trademark

7

Office.  A true and correct copy of a certified copy of the registration certificate is attached hereto as Exhibit 2.

47.     Cepia is also the owner of all right, title and interest in and to United States Trademark Registration No. 3,808,406 issued June 22, 2010 for the ZhuZhu Pets logo, which registration is valid and subsisting on the Principal Register of the United States Patent and Trademark Office.  A true and correct copy of a certified copy of the registration certificate is attached hereto as Exhibit 3.

48.     Cepia is also the owner of all right, title and interest in and to issued and pending applications for registration of the marks "ZhuZhu Pets" and "ZhuZhu Pets & Design" in a number of countries throughout the world including the European Community, Hong Kong, China, Canada, Mexico, Taiwan, Japan, the Philippines, Russia, Israel, Australia, New Zealand and Singapore.

49.     Cepia is the owner of all right, title and interest in and to the copyright in the sculptural 3-dimensional design of products within the Toy Line and in Copyright Registration No. VA 1-695-475 therefor.  A Copy of the registration certificate for Copyright Registration No. VA 1-695-475 is attached hereto as Exhibit 4.

50.     Copyright Registration No. VA 1-695-475 is valid and enforceable.

51.     Cepia is the owner of all right, title and interest in and to the copyright in the sculptural 3-dimensional design of packaging for the Toy Line and in Copyright Registration No. VA 1-698-129 therefor.  A Copy of the registration certificate for Copyright Registration No. VA 1-698-129 is attached hereto as Exhibit 5.

52.     Copyright Registration No. VA 1-698-129 is valid and enforceable.

53.     Cepia is the owner of all right, title and interest in and to the copyright in the 2-dimensional artwork of the ZhuZhu Pets logo used in conjunction with the Toy Line and in Copyright Registration No. 1-693-535 therefor.   A Copy of the registration certificate for Copyright Registration No. VA 1-693-535 is attached hereto as Exhibit 6.

54.     Copyright Registration No. VA 1-693-535 is valid and enforceable.

**C.     Alibaba.com Website and Alibaba's Infringing Acts**

55.     Alibaba uses the ZhuZhu Pets name, logo, packaging and product depictions on its websites in a manner which falsely indicates that the suppliers on the website are authorized sellers of genuine ZhuZhu Pets® products.

56.     When visiting the Alibaba Website, users are presented with a slogan indicating "Global Trade Starts Here."  A list of "Categories" provides links to a listing of suppliers for specific categories of goods.  A screen capture of the Alibaba Website homepage is attached hereto as Exhibit 7.

57.     When the user holds his/her browsing cursor over the category of "Toys/Hobbies" (without clicking), a link featuring the specific term "Zhu Zhu Pets" appears as the second clickable option.  The link to "Zhu Zhu Pets" appears alongside other general categories of toys such as "novelty products," "dolls," "action figures" and others.  A screen capture of this page is attached hereto as Exhibit 8.

58.     When the user clicks on the "Zhu Zhu Pets" link, he or she is directed to a microsite featuring listings of products available for purchase from specific suppliers.  The microsite includes photos, pricing and supplier details, product descriptions and other information relating to each product for sale.

9

59.     All of the product listings within the ZhuZhu Pets® microsite include the name "ZhuZhu Pets" or some variation thereof within the name of the product, require a minimum number of units per order ranging up to 2000 pieces, and indicate that the products are new.

60.     The prices per unit for these products are significantly lower than the retail price and the majority of these products are priced lower than Cepia sells ZhuZhu Pets® products wholesale directly to retailers or its authorized distributors.

61.     The majority, if not all, of the products being promoted on the ZhuZhu Pets® microsite of the Alibaba Website was not manufactured, approved, or otherwise authorized by or on behalf of Cepia.  Alibaba and the purported suppliers of these products are simply attempting to exploit and trade off of the fame and good will of Cepia's trademarks to sell product.

62.     Many of the products, which include stuffed teddy bears and toy mice simulating sexual intercourse, do not even resemble ZhuZhu Pets® or any other toys from the Zhu-niverse product family.  Screen captures of web pages that display these types of products on the microsite are attached hereto as Exhibit 9.

63.     Upon information and belief, the majority if not all of the products on the microsite which appear to be genuine ZhuZhu Pets® products are actually counterfeit or gray market merchandise, i.e. toys sold under the "ZhuZhu Pets" name, and/or bearing one or more of Cepia's trademarks, that were not manufactured, approved or otherwise authorized by Cepia.

64.     None of the so called "suppliers" selling the products on the microsite are authorized distributors of Cepia, nor are they retailers who purchase product directly from Cepia.

65.     Alibaba's grouping of products in the category of "Zhu Zhu Pets", along with Alibaba's usage of the "Zhu Zhu Pets" name and associated trademarks to attract browsers to the products, actively encourages users searching for Cepia's products to purchase counterfeit items,

along with goods sold by unauthorized distributors and other products not manufactured on

behalf of Cepia and that are not ZhuZhu Pets® products.

66.     In addition to the ZhuZhu Pets microsite, the Alibaba and AliaExpress Websites

include: (a) products that are identified as "ZhuZhu Pets" by name, but are not actually ZhuZhu

Pets® products, (b) products that are identified as "ZhuZhu Pets" by name, but were not

manufactured, approved or otherwise authorized by Cepia, and c) products offered in

conjunction with depictions of the ZhuZhu Pets logo, packaging or products within the Toy Line,

but were not manufactured, approved or otherwise authorized by Cepia.  These products,

combined with the products promoted on the ZhuZhu Pets microsite, will collectively be referred

to as the "Offending Products."

67.     Alibaba, along with those suppliers offering the Offending Products for sale on

the Alibaba and AliExpress Websites, have intentionally used the "ZhuZhu Pets" trademark,

logo, packaging, and product depictions to attract purchasers to the Offending Products, while

either knowing or being willfully blind to the fact that the Offending Products are not

manufactured, approved, or otherwise authorized by Cepia.

68.     In addition, Alibaba permits its suppliers of goods to become verified as "Gold

Suppliers," which Alibaba describes as "a premium type of membership for suppliers on

Alibaba.com."  Once approved, a "Gold Supplier" is authorized to display a "Gold Supplier" icon

in connection with goods listed for sale.

69.     When evaluating goods for sale on the Alibaba website, prospective purchasers

can click on a link next to a supplier's "Gold Supplier" icon, which directs the user to a microsite

that provides information regarding the "Gold Supplier" program.

DB04/821953.0058/3988587.4 IG09 - 2/10/2011 7:57:44 PM

70.     On this microsite, Alibaba explains that a "Gold Supplier" must undergo and pass independent authentication procedures.  In addition, the microsite explains that once approved, "Gold Suppliers" are authorized to display the "Gold Supplier" icon "to demonstrate their authenticity."  A screen capture of the microsite explaining the "Gold Supplier" program is attached hereto as Exhibit 10.

71.     As of the date of the filing of this Complaint, all suppliers of the Offending Products are listed as "Gold Suppliers," and the "Gold Supplier" icon appears next to each Offending Product.

72.     Along with the prominent use of the "ZhuZhu Pets" name, logo, packaging and product depictions, the "Gold Supplier" designation creates a false and misleading designation of fact, by representing to buyers that the sellers of the Offending Products are legitimate and authorized sellers of authentic Cepia products.

73.     Cepia has informed Alibaba, with demand letters and during an in-person meeting, that products being sold on the Alibaba and/or AliExpress Websites are not genuine or authorized ZhuZhu Pets® products.

74.     Alibaba informed Cepia that in order to remove the Offending Products, Cepia would need to submit its claims of infringement via the "Intellectual Property Protection System" known as "AliProtect" accessible on the Alibaba and AliExpress Websites.

75.     Cepia has used the "AliProtect" system to file over 3000 complaints regarding the violation of its rights.  Each Offending Product item must be separately identified on the AliProtect system.  While specific items objected to have been removed, Offending Products remain available on the Alibaba and AliExpress Websites and continue to be added daily.

12

76.     Alibaba has failed to eliminate repeat infringers from the Alibaba and/or AliExpress Websites who continue to offer Offending Products despite multiple claims being filed by Cepia against these repeat infringers through the "AliProtect" system.

77.     On the Alibaba and AliExpress Websites, Alibaba's own terms and conditions state, "No products can be sold on the site without the explicit permission from the intellectual property right holder.  Branded products are permitted to be displayed and sold on the site if a certificate of authorization has been issued by the brand owner."  A screen capture from the Alibaba Website featuring these terms is attached hereto as Exhibit 11.

78.     Cepia has not given Alibaba permission to sell the Offending Products, nor has Cepia issued any certificate of authorization to Alibaba.

79.     Alibaba, despite demands from Cepia that it cease and desist, continues to use the "ZhuZhu Pets" name, logo, packaging and product depictions on the Alibaba and AliExpress Websites to attract prospective purchasers to the Offending Products and to continue to promote products and suppliers that are displaying products that not are genuine and/or authorized products of Cepia.

80.     Alibaba's use of the "ZhuZhu Pets" name, logo, and packaging and product depictions has caused, and is likely to continue to cause, confusion or mistake among the purchasing public as to the origin, affiliation, connection or association of Cepia's products with the Offending Products.

81.     Alibaba's promotion of products that are not genuine or authorized products of Cepia in conjunction with the ZhuZhu Pets name, logo, packaging and product depictions, promotion of counterfeit ZhuZhu Pets products, and promotion of suppliers who are not authorized suppliers of ZhuZhu Pets has caused, and is likely to continue to cause, confusion or

13

mistake among the purchasing public as to the origin, affiliation, connection or association of Cepia's products with the Offending Products and is false and misleading.

82.     Alibaba's conduct has damaged Cepia including, without limitation, causing a significant loss of sales for Cepia, its retail customers and its authorized distributors.

83.     Alibaba's conduct will, unless restrained by this Court, further impair the value of Cepia's distinctive trademarks, trade dress and the goodwill associated therewith, causing irreparable harm to Cepia.

84.     Through the actions described herein, Alibaba and the suppliers using the Alibaba and AliExpress Websites have acted willfully with an intention to unfairly compete with Cepia.

**Count I**
**(Direct and Contributory Trademark Infringement, 15 U.S.C. § 1114(1)**
**and 15 U.S.C. § 1116(d))**

85.     Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 84, as if fully set forth herein.

86.     Alibaba's unauthorized use of the "ZhuZhu Pets" name and logo in connection with the sale and offering for sale of the Offending Products constitutes direct and contributory infringement of the rights of Cepia in and to its federally registered trademarks, in violation of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1116(d).

**Count II**
**(Trade Dress Infringement, 15 U.S.C. § 1125(a))**

87.     Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 86, as if fully set forth herein.

88.     The ZhuZhu Pets packaging and product design constitutes protectable trade dress in that the overall appearance and design of the packaging and products is distinctive, non-functional and serves as an indicator of a single source.

14

89.     The overall appearance and design of the packaging and products serve to identify Cepia's products and to distinguish the products from those of others.

90.     Cepia originated and holds exclusive rights in this trade dress.

91.     The overall appearance and design of the packaging and products create an arbitrary collection that is inherently distinctive.

92.     Furthermore, due to Cepia's unique and innovative toy design, combined with the extensive promotion and public recognition of the product line, the overall appearance and design of the packaging and products has acquired distinctiveness or secondary meaning in the marketplace, in that it has become associated with Cepia and the Toy Line in the minds of consumers.

93.     The overall appearance and design of the packaging and products has become famous, in that it is widely recognized and well known as being exclusively associated with Cepia's product line.

94.     Cepia has developed significant consumer and trade recognition and goodwill in the overall appearance and design of the packaging and products.

95.     Alibaba's depiction of the ZhuZhu Pets® product packaging and products is likely to cause consumer confusion or mistake in the future as to the affiliation, connection or association of Cepia with the Offending Products and/or confusion as to the origin, sponsorship, or approval of the Offending Products by Cepia in violation of 15 U.S.C. § 1125(a)(1).

96.     Customers and potential customers familiar with Cepia's Toy Line will be likely to believe that the Offending Products are genuine and authorized ZhuZhu Pets® products.

15

97.     Alibaba's depiction of the ZhuZhu Pets® product packaging and products constitutes a false designation of origin under 15 U.S.C. § 1125(a)(1).   The depictions wrongfully designate the Offending Products as originating from or being connected with Cepia.

98.     Through the actions described herein, Alibaba has acted willfully in using depictions of the ZhuZhu Pets® product packaging and products with an intention to unfairly compete with Cepia.

99.     Alibaba's conduct has damaged Cepia and will, unless restrained by this Court, further impair the value of Cepia's distinctive trade dress and the goodwill associated therewith.

### Count III
### (False Advertising, 15 U.S.C. § 1125(a)(1)(A) and (B))

100.     Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 99, as if fully set forth herein.

101.     Alibaba's listing of products that are not genuine ZhuZhu Pets products in conjunction with the ZhuZhu Pets name, logo, packaging and product depictions constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

102.     Alibaba's listing of products that are not authorized ZhuZhu Pets products in conjunction with the ZhuZhu Pets name, logo, packaging and product depictions constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

103.     Alibaba's listing of suppliers that are not authorized suppliers of ZhuZhu Pets® products in conjunction with the ZhuZhu Pets® name, logo, packaging and product depictions constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

16

104.    Alibaba's grouping of the Offending Products in the category of "ZhuZhu Pets", along with Alibaba's usage of the "ZhuZhu Pets" name and "Gold Supplier" designations to attract browsers to the Offending Products, constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

105.    The metadata and source code for the Alibaba Website pages that feature the Offending Products (the "Source Code"), which is designed by Alibaba to attract browsers searching for Cepia products to the Alibaba Website, contains phrases such as "Find a Zhu Zhu Pets manufacturer", "choose quality Zhu Zhu Pets" and "Zhu Zhu Pets Manufacturers, Suppliers and Exporters on Alibaba".

106.    Alibaba's usage of these terms in the Source Code, to attract browsers to the Offending Products, constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

### <u>Count IV</u>
### (Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A))

107.    Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 106, as if fully set forth herein.

108.    Customers and potential customers familiar with Cepia's Toy Line will be likely to believe that the Offending Products are actually products from Cepia's Toy Line, or that the Offending Products are an extension of the Toy Line.

109.    Alibaba's usage of the "ZhuZhu Pets" name, logo, packaging and product depictions is likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection or association of Cepia with the Offending Products, and/or as to the origin, sponsorship, or approval of the Offending Products by Cepia, in violation of 15 U.S.C. § 1125(a)(1).

## Count V
### (Dilution, 15 U.S.C. § 1125(c))

110.    Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 109, as if fully set forth herein.

111.    Cepia's ZhuZhu Pets trademark is, and has been prior to Alibaba's infringing acts set forth herein, distinctive and famous as a result of (among other things) Cepia's extensive promotion of its trademark, along with the extraordinary success, acclaim, and worldwide recognition of the ZhuZhu Pets Toy Line.

112.    Alibaba's infringing acts, as set forth herein, constitute willful and intentional dilution of the distinctive quality of, and the goodwill associated with, Cepia's ZhuZhu Pets trademark in violation of 15 U.S.C. § 1125(c).

## Count VI
### (Direct and Contributory Common Law Trademark Infringement)

113.    Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 112, as if fully set forth herein.

114.    Alibaba's infringing acts, as set forth herein, constitute direct and contributory infringement of the common law trademark rights it enjoys as a result of its continued use of the ZhuZhu Pets® trademark, under applicable common law.

## Count VII
### (Direct and Contributory Common Law Unfair Competition)

115.    Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 114, as if fully set forth herein.

116.    Alibaba's infringing acts and false advertising, as set forth herein, constitute direct and contributory unfair competition under applicable common law.

18

<u>**Count VIII**</u>
**(Injury to Business Reputation and Dilution Under R.S.Mo. § 417.061.1)**

117.     Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 116, as if fully set forth herein.

118.     Alibaba's infringing acts and false advertising, as set forth herein, threaten to dilute and/or have diluted the distinctive quality of Cepia's trademarks and have injured Cepia's business reputation in violation of Mo. Rev. Stat. Section 417.061.1.

<u>**Count IX**</u>
**(Unjust Enrichment)**

119.     Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 118, as if fully set forth herein.

120.     Alibaba profits from the listing and sale of Offending Products on the Alibaba and AliExpress Websites.

121.     Therefore, Alibaba receives a benefit from its usage of the "ZhuZhu Pets" name, logo, packaging and product depictions on its websites in connection with the Offending Products, along with its continued marketing and sale of the Offending Products.

122.     Alibaba also receives a benefit from its false indication that the suppliers listed on its websites in connection with the Offending Products are authorized suppliers of genuine ZhuZhu Pets® products.

123.     As such, Alibaba has been unjustly enriched by its usage of the "ZhuZhu Pets" name, along with the marketing and sale of the Offending Products and promotion of the suppliers, to the detriment and at the expense of Cepia.

124.     It would be unjust for Alibaba to retain this benefit, and Alibaba should not be permitted to reap the benefits of its wrongful conduct.

19

## Count X
### (Direct and Contributory Copyright Infringement)

125.    Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 124, as if fully set forth herein.

126.    The ZhuZhu Pets logo, the 3-dimensational design of products within the Toy Line and the 3-dimensational design of packaging for products within the Toy Line (collectively the "Copyrighted Works") contain copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq., and constitutes an original work of authorship.

127.    Alibaba has violated Cepia's exclusive rights in its copyrighted works by copying, publicly displaying, and publicly distributing the Copyrighted Works on the Alibaba and Aliaexpress Websites, and by permitting others to do so.

128.    The content of the Alibaba and Aliaexpress Websites is within the control of Alibaba, and Alibaba knew or had reason to know that unauthorized display and distribution of the Copyrighted Works was occurring on the websites

129.    Cepia has been damaged by Alibaba's acts of copyright infringement and will continue to be damaged unless enjoined by this Court.

## RELIEF SOUGHT ON ALL COUNTS

WHEREFORE, Cepia prays for an Order and Judgment against Alibaba as follows:

A.    That Alibaba.com Hong Kong Limited and Alibaba Group Holding Limited and each of their officers, agents, servants, employees, representatives, and all others in active concert or participation with them, either directly or indirectly, be preliminarily and permanently enjoined and restrained from:

i.    using the "ZhuZhu Pets" name, logo, packaging, and/or product
depictions, and any other designation that creates a likelihood of

confusion, mistake, or deception with respect to Cepia or its ZhuZhu Pets<sup>®</sup> Toy Line, or in any way dilutes the ZhuZhu Pets trademark and/or trade dress;

ii.    doing any other act or thing likely to induce or that induces the mistaken belief that Alibaba or the Alibaba or AliExpress Websites and any suppliers offering products are in any way affiliated, connected, or associated with Cepia or the Toy Line, other than products offered by Cepia's authorized distributors;

iii.    licensing, authorizing and/or permitting others to use the ZhuZhu Pets trademark or any other confusingly similar mark;

iv.    licensing, authorizing, and/or otherwise permitting others to sell products designated and/or labeled as "ZhuZhu Pets" or any other confusingly similar mark;

v.    licensing, authorizing and/or otherwise permitting others to sell products in conjunction with depictions of the ZhuZhu Pets name, logo, packaging or products, other than genuine products offered by Cepia and its authorized distributors; and

vi.    injuring Cepia's business reputation and the goodwill associated with the ZhuZhu Pets trademark, logo, packaging, and products, and from otherwise unfairly competing with Cepia in any manner whatsoever.

B.    That Alibaba be required to immediately remove all uses of, references to and depictions of the ZhuZhu Pets name, logo, packaging and products from any website, including

DB04/821953.0058/3988587.4 IG09 - 2/10/2011 7:57:44 PM

the Alibaba and AliExpress Websites; unless uses, references or depictions are used <u>exclusively</u> in connection with sales of products by authorized distributors of Cepia;

      C.      That Alibaba provide an accounting of all profits derived from Alibaba's trademark infringement, trade dress infringement, false designation of origin and dilution of Cepia's rights; that Alibaba pay such profits to Cepia along with any damages sustained by Cepia and Cepia's costs of the action (including interest);  and that such amount be trebled, all pursuant to 15 U.S.C. § 1117(a);

      D.      That Alibaba pay to Cepia its reasonable attorney's fees and such other compensatory damages and costs that this Court determines is fair and appropriate pursuant to 15 U.S.C. § 1117(a);

      E.      That Alibaba provide an accounting of all profits derived from Alibaba's copyright infringement and pay to Cepia its actual damages attributable to Alibaba's copyright infringement and any additional profits of Alibaba, or, upon the election of Cepia, that Alibaba pay to Cepia statutory damages in an amount as the court considers just, with such award increased due to willful nature of Alibaba's actions, all pursuant to 17 U.S.C. §504;

      F.      That Alibaba pay to Cepia its reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505;

      G.      That Alibaba pay to Cepia an amount that this Court determines is fair to compensate Cepia for Alibaba's common law unfair competition, trademark infringement, trade dress infringement, trademark dilution, injury to business reputation, unjust enrichment, and copyright infringement, including an award of punitive damages for the wanton and willful misconduct of Alibaba;

      H.      Such other and further relief as the Court deems proper and necessary.

Respectfully Submitted,

**STINSON MORRISON HECKER LLP**


By: _/s/ Sandra J. Wunderlich_
      Sandra J. Wunderlich, #39019MO
      Andrew J. Scavotto, #57826MO
      7700 Forsyth Boulevard, Suite 1100
      St. Louis, MO 63105
      (314) 863.0800 (telephone)
      (314) 863.9388 (facsimile)
      swunderlich@stinson.com
      ascavotto@stinson.com

      Penny R. Slicer, #38139MO
      1201 Walnut Street, Suite 2900
      Kansas City, MO 64106-2150
      (816) 842.8600 (telephone)
      (816) 691.3495 (facsimile)
      pslicer@stinson.com

ATTORNEYS FOR PLAINTIFF CEPIA, LLC