IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CEPIA, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:11-CV-273-SNLJ |
| ALIBABA.COM HONG KONG LIMITED, et al., | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF CEPIA, LLC'S OPPOSITION TO DEFENDANT
ALIBABA GROUP HOLDING LIMITED'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Alibaba Group Holding Limited ("Alibaba Group") owns the domain name www.alibaba.com, owns the trademarks/service marks "Alibaba" and "Aliexpress" under which the alibaba.com and aliexpress.com websites operate, and is a majority shareholder of Alibaba. Given these undisputed facts, Alibaba Group's bald assertions that it has no control or role whatsoever in the operation of the websites are without support. To the contrary, these facts (which were specifically alleged in the Complaint) support a finding that Alibaba Group controls and benefits from the operation of the websites. Therefore, Alibaba Group is subject to personal jurisdiction in this Court, on the basis of the infringing and other unlawful activities occurring on the websites.

By controlling operation of alibaba.com--a worldwide network that connects buyers and sellers of every conceivable consumer product--Alibaba Group has deliberately and systematically availed itself of the benefits of doing business in Missouri. Alibaba Group's contacts with Missouri through its websites are more than sufficient to establish personal jurisdiction in this Court. In fact, over two thousand Missouri suppliers are registered on the

alibaba.com website.  Moreover, this action arises directly out of the operation of the websites, because the content and activities on the websites infringe the intellectual property and other rights of Plaintiff Cepia, LLC ("Cepia"), a Missouri corporation.  Alibaba Group cannot infringe the rights of a Missouri company through its control of the websites and then claim that it has no expectation of answering for those violations in a Missouri court.

**Factual Background**

Alibaba operates a well-known network of websites, including a global trade platform for importers and exporters ("alibaba.com") and a transaction-based wholesale marketplace ("aliexpress.com") designed for buyers seeking fast shipment of small quantities of goods.  Alibaba Group is a majority shareholder of Alibaba (Doc. 1, ¶ 6).  Alibaba boasts that its network hosts over 65 million registered users in more than 240 countries and regions, including the United States.  *See* Alibaba.com Company Overview, attached as Exhibit 1.  There is no question that the websites facilitate commerce throughout the world, which is clearly the purpose of the websites.

Alibaba Group owns the domain name for the alibaba.com website (Doc. 1, ¶ 7; *see also* Exhibit 1 attached hereto).  Alibaba Group also owns United States registrations for the trademarks/service marks "Alibaba" and "Aliexpress" that are used and displayed on the alibaba.com website (Doc. 1, ¶ 8; *see also* trademark registrations, attached as Exhibit 2).  Presumably, Alibaba Group licenses the use of the domain name and the trademark/service marks to Alibaba for operation of the websites, and thereby has the right and obligation to exercise control over operation of the websites.  (Doc. 1,¶ 9).  Alibaba Group is also a majority shareholder of Alibaba and therefore benefits from the operation of the websites.  (Doc. 1, ¶ 6).

To do business on alibaba.com, each user is required to register by creating a profile and accepting the terms and conditions set forth in Alibaba's membership agreement.  *See* screen shots of Alibaba.com registration process, attached as Exhibit 4; Membership Agreement, attached as Exhibit 5.  After creating a profile and entering into the membership agreement, users can post goods for sale, browse for goods, request customized sourcing, access aliexpress.com, place orders, track orders, interact with other buyers and sellers, and update or review product information.  A member of Alibaba.com can search for suppliers of products in the United States, including Missouri.  If the search term "Missouri" is used, the names of 2,051 suppliers located in Missouri are provided by alibaba.com.  *See* results of Missouri supplier search, attached as Exhibit 6.

Any user of the Internet, including those located within this judicial district, can access alibaba.com and aliexpress.com to browse, purchase goods and contact suppliers.  The websites feature interactive, community-based forums that allow users to review and share information, submit questions regarding the marketplace, post on message boards, learn about trade shows occurring throughout the world, monitor prices of certain goods and learn about various industries through an encyclopedia, among other things.  *See* screen shots of Alibaba.com forums and other interactive features, attached as Exhibit 7.  In other words, the alibaba.com website creates a virtual marketplace for merchants to do business over the Internet.

Cepia is a family-run toy business based in St. Louis, Missouri.  Cepia is the owner and distributor of a widely successful toy line that is sold under the registered trademark "ZhuZhu Pets".  (Doc. 1, ¶¶ 30-47).  Cepia also owns registered copyrights in the ZhuZhu Pets logo, packaging and product design.  (Doc. 1, ¶¶ 49-54).  In February of 2011, Cepia filed this lawsuit against Alibaba.com and Alibaba Group asserting that certain content and activities on the

3

alibaba.com and aliexpress.com websites constitutes direct and contributory trademark infringement, trade dress infringement, false advertising, false designation of origin, copyright infringement, unfair competition and dilution. (Doc. 1, ¶ 1).

The Complaint asserts, among other things, that Alibaba Group and Alibaba use the ZhuZhu Pets trademark, logo, packaging and product depictions on the websites in a manner that falsely indicates that listed suppliers are authorized sellers of genuine ZhuZhu Pets products. (Doc. 1, ¶ 55). For example, at the time of filing the Complaint, the home page of alibaba.com included a link titled "Zhu Zhu Pets" that took users to a "microsite" featuring listings of suppliers purporting to sell ZhuZhu Pets products. (Doc. 1, ¶¶ 57-59). These listings included Cepia's trademark "ZhuZhu Pets" and other confusingly similar names, as well as depictions of Cepia's copyrighted logo, packaging and products. (Doc. 1, ¶¶ 59-64). None of the so called "suppliers" selling products on the microsite were authorized distributors of Cepia, nor were they retailers who purchased product from Cepia. (Doc. 1, ¶ 64). Yet many of the suppliers were listed as "Gold Suppliers" which, according to the website, demonstrates the suppliers "authenticity." (Doc. 1, ¶¶ 68-72). In addition to the microsite, the alibaba.com and aliexpress.com websites include supplier listings for products either identified as "ZhuZhu Pets" by name, or shown in conjunction with depictions of Cepia's copyrighted logo, packaging or products. (Doc. 1, ¶ 66). The majority, if not all, of these products are not genuine ZhuZhu Pets products. *Id*.

The Complaint asserts that Alibaba Group and Alibaba are guilty of infringing upon the trademarks, trade dress and copyrights of Cepia by intentionally using the ZhuZhu Pets trademark, logo, packaging and product depictions to attract purchasers to the illegitimate products. (Doc. 1, ¶ 67). Furthermore, Cepia alleges that Alibaba Group and Alibaba are guilty

4

of false advertising, by grouping the products in the microsite designated as "Zhu Zhu Pets" and using the Gold Supplier designation with illegitimate suppliers.  (Doc. 1, ¶¶ 100-106).

## ARGUMENT

**I.  Legal Standards**

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a *prima facie* showing that personal jurisdiction exists.  *Stevens V. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998).  At this stage, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Inc.,* 89 F.3d 519, 522 (8th Cir. 1996).

A federal court may exercise jurisdiction over a foreign defendant to the extent permitted by the forum state's long-arm statute and by the Due Process clause of the Constitution.  *Miller v. Nippon Carbon Co.,* 528 F.3d 1087, 1090 (8th Cir. 2008).  In Missouri, the state's long-arm statute is broadly construed to reach as far as due process will allow.  *Clune v. Alimak, AB,* 233 F.3d 538, 541 (8th Cir. 2000).  As a result, the Court's jurisdictional inquiry is limited to determining whether asserting personal jurisdiction over the defendant comports with due process.  *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004).

The Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster, considering: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and (4) the interest of the forum state; and (5) the convenience of the parties.  *See Dever*, 380 F.3d at 1074.  The first three factors are of primary importance, while the last two are "secondary factors."  *Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995).

5

The third factor distinguishes between specific and general jurisdiction. *See Digi-Tel*, 89 F.3d at 523, n. 4. General jurisdiction is appropriate where a defendant maintains "continuous and systematic" contacts with the forum state, such that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n. 9, 416, 418-19 (1984)). Where specific jurisdiction is asserted, due process is satisfied if the defendant has purposefully directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities. *Enterprise Rent-A-Car Company v. U-Haul International, Inc.,* 327 F.Supp.2d 1032, 1037 (E.D. Mo. 2004), *citing Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1003 (8th Cir. 1996).

II. **Cepia has made a prima facie showing that Alibaba Group controls operation of the Alibaba websites, which establishes personal jurisdiction over Alibaba Group in this Court.**

Under Eighth Circuit law, a Complaint should not be dismissed for lack of personal jurisdiction if there is ***any*** genuine issue as to any fact material to the question. *See Radaszewski by Radaszewski v. Telecom Corp.,* 981 F. 2d 305, 309 (8th Cir. 1992). Jurisdiction "need not be proved by a preponderance of the evidence until trial, or until the court holds an evidentiary hearing." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991). Rather, the nonmoving party need only make a prima facie showing of personal jurisdiction in order to defeat a motion to dismiss. *Id.* In this case, Cepia alleged that Alibaba Group owns, controls and/or operates the Alibaba Websites. *See* Complaint, Doc. 1, ¶¶ 7-10. Because Cepia has made a prima facie showing that Alibaba Group controls operation of the websites, personal jurisdiction over Alibaba Group is appropriate in this Court.

6

      **A.**    **Alibaba Group owns the www.alibaba.com domain name and "Alibaba" and "Aliexpress" service marks.**

Alibaba Group argues that it is a holding company that does not have any direct control over Alibaba and does not play any role in the operations of the Alibaba websites. *See* Doc. 36, p. 3. This is controverted by publicly available information, which reveals that Alibaba owns the domain name for the website located at www.alibaba.com and the trademarks/services marks "Alibaba" and "Aliexpress" that are used on the websites. *See* Exhibit 2 and 3. Thus, even if the websites are principally being operated by Alibaba, such operation is subject to the control of Alibaba Group.

It is well-established that "one of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *See El Greco Leather Products Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2nd Cir. 1986), *cert. denied* 484 U.S. 817 (1987). In fact, not only does a trademark owner have the right to maintain adequate control over the nature and quality of goods and services sold under the mark by the licensee - it has a duty to do so. Failure to maintain adequate quality control is considered "naked licensing" which can result in abandonment of the mark. *See* McCarthy on Trademarks §18:42, pp. 18-84-87 and §18:48, pp. 18-102.2-109;[1] *see also Dawn Donut Co. v. Hart's Food Stores, Inc.* 267 F.2d 358, 367 (2d Cir. 1959); *Heaton Distributing Co. v. Union Tank Car Co.,* 387 F.2d 477 (8th Cir. 1967). The requirement that use of a mark be controlled by the owner applies to licensed uses amongst related companies and, in particular, to holding companies. *See* McCarthy on Trademarks and Unfair Competition 18:49-18:51, pp. 18-110-116.1. At a minimum, the record reveals that Alibaba Group has not only the ability, but the ***obligation*** to maintain some level of control over operation of the websites.

---

[1] For the Court's convenience, referenced portions of McCarthy on Trademarks are attached hereto as Exhibit 8.

7

**B.   Alibaba Group's relationship with Alibaba also establishes a prima facie showing that this Court can exercise personal jurisdiction over Alibaba Group.**

The Eighth Circuit has found that a synergistic relationship between two companies is clearly relevant to the jurisdictional question, even if the relationship may not constitute an abuse of the corporate organizational form.  *See Anderson v. Dassault Aviation,* 361 F. 3d 449 (8th Cir. 2004).  In *Anderson,* a Michigan resident ("Anderson") filed suit to recover for injuries suffered while working as a flight attendant on a Dassault Falcon business.  Anderson named two defendants –a French manufacturer of the jet ("Dassault Aviation"), and an affiliated company responsible for selling and leasing the jets in the western hemisphere ("Dassault Falcon").  *See* 361 F. 3d at 451.  The district court dismissed the claims against Dassault Aviation for lack of personal jurisdiction.

In assessing the nature of the contacts between Dassault Aviation and the state of Arkansas, the Eighth Circuit observed that Dassault Aviation's contacts with Arkansas resulted, in large part, from its business relationship with Dassault Falcon.  *See* 361 F. 3d at 452.  The Eighth Circuit noted that the "circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction." *Id.*  Importantly, the *Anderson* court stated that physical presence in Arkansas nor piercing Dassault Falcon's corporate veil was required to establish the necessary minimum contacts.  Rather, the Eighth Circuit held that "determining the propriety of jurisdiction…always involves applying principles of fairness and reasonableness to a distinct set of facts, and the determination is not readily amenable to rigid rules that can be applied across the entire spectrum of cases." *Id.*

8

With these principles in mind, the Eighth Circuit observed that Dassault Aviation benefited greatly from Dassault Falcon's distribution of jets and had a clear awareness of its operations in Arkansas.  *See* 361 F. 3d at 452.   The Court noted that both companies used the word "Dassault" in their name, and utilized a common logo.  *Id.,* at 454.   Further, the court found that the Dassault companies could achieve synergy because the directors of the two companies overlapped.  *Id.*  On these facts, the Eighth Circuit found that the Dassault entities utilized a "unified strategy", such that the Arkansas court's exercise of jurisdiction over Dassault Aviation was reasonable and fair.  *Id.,* at 454-455.

Just like the Dassault case, the close relationship between Alibaba Group and Alibaba supports the exercise of personal jurisdiction over Alibaba Group.  There is no question that as Alibaba's majority shareholder, Alibaba Group benefits greatly from Alibaba's website and is aware of its operations.  Just like the Dassault defendants, both companies use the word "Alibaba" in their name, and they share a logo.  *See* Exhibit 1.  Just as in *Anderson,* the two companies have the same chairman – Jack Ma.  *See* Organizational Chart, Exhibit 9.  Cepia alleged that both companies operate and have the ability to control the Alibaba Websites, and Alibaba Group's reliance on the ruling in *P.S. Prods. v. Alibaba.com, Inc.* is misplaced (Doc. 36, p. 8), because *PS Products* involved different claims against a different Alibaba entity.  *See* 2011 WL 861164 (E.D.Ark. Mar. 10, 2011).  The synergy and close relationship between *these* Defendants supports a prima facie showing that personal jurisdiction over Alibaba Group is reasonable and fair.

Alibaba Group's ownership of the www.alibaba.com domain name and "Alibaba" trademarks establishes that the Court can establish personal jurisdiction over Alibaba Group.  If the Court requires more information regarding the nature and extent of Alibaba Group's

9

operation of the website or the synergy between the Defendants, Cepia hereby requests jurisdiction discovery on these issues. Jurisdictional discovery is appropriate where the existing record is inadequate to support personal jurisdiction, but the plaintiff demonstrates that it can supplement its allegations through discovery. *See Lakin v. Prudential Securities, Inc.,* 348 F.3d 704, 713 (8th Cir. 2003); *1st Technology v. Digital Gaming Solutions,* 2009 WL 879463 * 7 (E.D.Mo. Mar. 30, 2009). Discovery also is appropriate where the parties have not made a satisfactory showing of the relevant facts. *Id.* Given the allegations in Cepia's Complaint and the facts before the Court, these standards are easily met.

### III. This court has specific personal jurisdiction over Alibaba

#### A. The nature and quality of Alibaba's contacts with the forum supports a finding of specific personal jurisdiction.

Alibaba Group is subject to personal jurisdiction in this forum based upon its control and participation in the operation of the highly interactive alibaba.com and aliexpress websites. This Court applies the analytical framework established in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W. D. Pa. 1997), to evaluate whether jurisdiction is proper based upon Internet activity. *See Lakin,* 348 F.3d at 711. Under the "sliding scale" approach of *Zippo*, courts examine the interactivity of the website and its commercial nature to determine the significance of the website's contacts with the forum. *Id.*

The *Zippo* analysis identifies three different types of websites. The first type is an active website wherein defendant conducts business over the Internet by entering into contracts with residents of a foreign jurisdiction through knowing and repeated transmission of computer files over the Internet. *See Lakin,* 348 F. 3d at 710, *Zippo,* 952 F. Supp. At 1124. This activity justifies the exercise of personal jurisdiction over the defendant. *Id.* At the opposite end of the spectrum is a passive website where defendant simply posts information accessible to users in

10

foreign jurisdictions.  *Id.*  A passive website is not grounds for the exercise of personal jurisdiction.  *Id.*  In between these two types are interactive websites where a user can exchange information with the host computer.  Courts examine the level of interactivity and commercial nature of the exchange of information to determine whether the exercise of personal jurisdiction based upon the website is appropriate.  *Id.*

There is no question that alibaba.com is an interactive website that allows users to transmit information, and conduct business.  Buyers and sellers use alibaba.com to establish a contractual relationship with Alibaba, which allows them access to thousands of merchants with whom to do business over the Internet.  Just as Alibaba advertises it to be, the website is a worldwide marketplace for buyers and sellers, including those located in this judicial district.

Alibaba Group argues that it cannot be subject to jurisdiction in Missouri because it has no physical presence here.  *See* Doc. 36, p. 3, 5-6.  But, it is well-established that physical presence in the state is not necessary, and a party's commercial activity on the Internet alone can support a finding of personal jurisdiction.  *See Lakin v. Prudential Securities, Inc.,* 348 F.3d 704, 711 (8th Cir. 2003) (Internet activity sufficient to exercise personal jurisdiction over defendant).  *See also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 468 (1985) (jurisdiction may not be avoided merely because the defendant did not physically enter the forum state); *see also Keeton v. Hustler Magazine,* 465 U.S. 770 (1984).

Alibaba Group also attempts to downplay the nature and quality of its Internet contacts by noting that postings on its websites are made by third parties, and not by Alibaba-related entities.  *See* Doc. 36, p. 7.  This is simply false.  Cepia alleged that Alibaba and Alibaba Group – not third parties – used Cepia's trademarks and copyrights on its website, and posted links to infringing products.  *See* Doc. 1, ¶¶ 57-64.  Simply put, it is Alibaba Group's own infringing

11

activity about which Cepia complains in this suit.  Clearly, Alibaba Group cannot hide behind its third parties when its conduct is at issue.  *See California Software Inc., v. Reliability Research, Inc.,* 631 F. Supp. 1356, 1362 (C.D. Cal. 1986) (defendant subject to personal jurisdiction where defendants' conduct in facilitating the transactions was the cause of injury to plaintiff in the forum state).  The law in this district is clear—Alibaba Group is subject to jurisdiction in this Court based upon its Internet activity, which has caused and is continuing to cause harm to Cepia in this district.

      **B.**    **The quantity of Alibaba Group's contacts with the forum supports a finding of specific jurisdiction.**

Although this Court considers the quantity of contacts the defendant has with the forum state, it is certainly not determinative when specific jurisdiction is alleged.  *See Magnetic Works, Ltd. v. Khan,* 2006 WL 1876969 *5 (E.D. Mo. July 5, 2006); *West Publishing Co. v. Stanley,* 2004 WL 73590 * 4 (D. Minn. Jan. 7, 2004).  In any event, a review of alibaba.com reveals that over 2,000 Missouri suppliers are registered on the alibaba.com website.  *See* Exhibit 5.  Further, a single tortious act is sufficient to support personal jurisdiction consistent with due process standards.  *See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957); *Peabody Holding Co. v. Costain Group, PLC,* 808 F. Supp. 1425, 1437 (E.D. Mo. 1992).  Because Alibaba Group is controlling a highly interactive website to violate Cepia's rights, resulting in harm to Cepia here, Alibaba Group is subject to specific jurisdiction in this forum.

      **C.**    **Alibaba Group's contacts with the forum are directly related to Cepia's claims, such that specific jurisdiction over Alibaba Group is appropriate.**

In addition to the nature and quality of a defendant's contacts with the forum state, courts also consider whether the contacts are related to the cause of action.  *Enterprise-Rent-A-Car,* 327 F. Supp. at 1044.  Here, Alibaba Group's contacts with Missouri are directly related to the claims at issue.  Alibaba Group is using Cepia's intellectual property on its website to promote

12

the sale of infringing goods, which is causing harm to Cepia in Missouri. *See Keeton v. Hustler Magazine,* 465 U.S. 770, 780-81 (1984) (a defendant who purposefully directs his actions at a resident of the forum has "fair warning" that he may have to litigate there). Alibaba Group also used the ZhuZhu Pets microsite and the "Gold Supplier" designations to falsely advertise the products being offered through the site.

In *Enterprise-Rent-A-Car*, this Court exercised personal jurisdiction over a Nevada corporation with its principal place of business in Arizona based upon its alleged infringement of plaintiff's "e-move" trademark on a website. *See* 327 F. Supp. 2d at 1035. Applying the *Zippo* test, this Court found the defendant's website to be highly interactive and even though defendant's contacts with the forum state arose solely from its website, this Court held that this was sufficient to satisfy due process. *Id.,* at 1042-44. This Court explained that "[defendant's] contacts with the forum state are closely related to the subject matter of this action, as the same web pages that allow interactivity with Missouri residents . . . contain the 'e-Move' marks alleged to infringe on plaintiff's marks." *Id.,* at 1044. Because trademark infringement is a tort, and the economic effects of infringement are felt where the trademark owner has its principal place of business, personal jurisdiction was proper. *Id*.

Similarly, the same web pages that allow interactivity with Missouri residents also contain Cepia's trademarks and copyrighted works. Under these circumstances, Cepia's cause of action arises directly out of Alibaba Group's Internet contacts with Missouri, such that personal jurisdiction is appropriate in this court. *Enterprise,* 327 F.Supp. at 1044-45; *see also Maritz, Inc. v. Cybergold, Inc.,* 947 F. Supp. 1328, 1334-45 (E.D. Mo. 1996) (defendant purposefully availed itself to Missouri forum through internet activities); *Teter v. Glass Onion,* 2009 WL 233978 * 4 (W.D. Mo. Jan. 30, 2009) (personal jurisdiction appropriate where effects of allegedly infringing

13

website were felt in Missouri by trademark owner).

### D. Missouri has a strong interest in providing a forum for its businesses

It is well-established that Missouri has a strong interest in protecting the trademarks of its residents. *See Enterprise Rent-A-Car,* 327 F. Supp. 2d at 1044; *Anheuser-Busch Incorporated v. City Merchandise,* 176 F. Supp. 2d 951, 958 (E.D. Mo. 2001) (court found that it was in Missouri's interest to protect A-B from infringement). Because Cepia is incorporated and headquartered in Missouri, any economic injury from the alleged infringement is suffered in Missouri. *Enterprise,* 327 F. Supp. 2d at 1044; *citing Dakota Indus.,* 946 F. 2d at 1388. This factor weighs in favor of the exercise of personal jurisdiction.[2]

### IV. The "effects" doctrine also establishes personal jurisdiction over Alibaba in this Court.

In *Calder v. Jones,* the Supreme Court approved the "effects" doctrine, which provides an additional basis for exercising personal jurisdiction over Alibaba. The "effects" doctrine allows the exercise of personal jurisdiction where a defendant's intentional tortious actions are expressly aimed at the forum state, thus causing harm to the plaintiff in the forum state. *See Calder,* 465 U.S. 783 (1984). In the Eighth Circuit, the *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state'". *See Dakota Indus.,* 946 F. 2d at 1390-91.

Federal courts have used the *Calder* test to exercise personal jurisdiction over out-of-state defendants in trademark cases. In *Indianapolis Colts, Inc. v. Metro Baltimore Football Club, L.P.*, the defendant was based in Baltimore, and its only activity in the forum state of Indiana

---

[2] The fifth factor, convenience of the parties, is a secondary consideration. While Alibaba Group is headquartered in Hong Kong, this fact cannot defeat jurisdiction where Alibaba's conduct caused harm to a Missouri company. Further, Alibaba Group cannot show that it is so burdened by defending itself in this forum that traditional notions of fair play and substantial justice are implicated. Alibaba Group is one of the largest, most successful companies in the world and is represented by capable counsel here in St. Louis.

14

was the nationwide television broadcast of its football games.  *See* 34 F.3d 410, 411 (7th Cir. 1994).  The plaintiff alleged that its trademarks were infringed via the telecast.  The Seventh Circuit found that although there was no physical entry into the state, the effect of infringing a trademark via telecast would result in an injury that would be felt mainly in Indiana.  *Id.*  Applying the *Calder* "effects" test, the court exercised jurisdiction over the defendant.  *Id.; see also Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,* 1998 WL 207860 (C.D. Ill. Apr. 1, 1998) (defendant's operation of a website that was accessible to residents constituted entry into the forum state, and personal jurisdiction was appropriate in Illinois where the effects of trademark infringement on defendant's website were felt by the plaintiff in Illinois).

Just like the defendants in *Indianapolis Colts and Bunn-O-Matic Corp.*, Alibaba Group's infringement of Cepia's trademarks and copyrights on its website is causing harm to Cepia in St. Louis.  By using the ZhuZhu Pets trademarks, trade names and logos to direct millions of consumers to infringing products on the Alibaba.com website, Alibaba Group intentionally directed the alleged harm at Cepia, knowing the harm from such conduct would be felt in the forum state.  Under these circumstances, the *Calder* "effects" test supports the exercise of personal jurisdiction over Alibaba Group.[3]

**V.     This court also has general jurisdiction over Alibaba Group**

Because this Court has specific jurisdiction over Alibaba Group, general jurisdiction is unnecessary.  Nonetheless, the record reveals that Alibaba has sufficient contacts with Missouri to establish general jurisdiction.  In *Lakin,* the Eighth Circuit explained that a general jurisdiction analysis requires the Court to consider not only the "nature and quality" of the contacts under *Zippo*, but the quantity of the defendant's contacts with the forum.  *See* 348 F.3d at 712.

---

[3] The Eighth Circuit applies *Calder* in connection with the traditional five-factor test for personal jurisdiction, noting that *Calder* simply requires the consideration of additional factors when an intentional tort is alleged.  *See Dakota Indus.,* 946 F. 2d at 1391.

15

As discussed above, Alibaba Group purposefully availed itself of the laws of Missouri through its control of the highly interactive network of websites. A cursory review of alibaba.com reveals that Alibaba Group undoubtedly has significant contacts with Missouri, that neither Cepia nor the Court can precisely measure.  Interestingly, Alibaba Group provided no information regarding the number of registered suppliers, buyers or users in Missouri on the websites, nor did it discuss the number of Missouri residents that view the websites or exchange information on the interactive message boards.  *See* Doc. #34, 34-1.  If the Court requires more information regarding the nature and extent of Alibaba Group's contacts, targeted jurisdictional discovery would be appropriate to further develop the record.  *See Lakin*, 348 F.3d at 713; *1st Technology v. Digital Gaming Solutions,* 2009 WL 879463 * 7 (E.D.Mo. Mar. 30,2009).

## VI.     Alternatively, Federal Rule of Civil Procedure 4(k)(2) authorizes personal jurisdiction over Alibaba.

Federal Rule of Civil Procedure 4(k)(2) was added in 1993 to deal with a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States, and lacks contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy due process requirements.  *See Graduate Management Admission Council v. Raju,* 241 F. Supp. 2d 589, 597 (E.D. Va. 2003).  The Rule:

> grants a district court the statutory power to exercise jurisdiction over a foreign defendant when authorized by federal statute, or where foreign defendants, party to a suit pursuant to federal law, are not subject to jurisdiction in any state.

*See* Fed.R.Civ.P. (4)(k)(2).  The Rule thus permits a federal court to exercise jurisdiction (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution and laws of the United States".  *See Renaissance Pen Company v. Krone, LLC,* 2006 WL 6322521 (E.D. Mo. Apr. 11, 2006).  Therefore, the

16

exercise of jurisdiction depends on whether the defendant has sufficient contacts with the United States *as a whole* to justify the exercise of personal jurisdiction.  *Id., see also 1ˢᵗ Technology,* 2009 WL 879463 * 6*, citing Mwani v. bin Laden,* 417 F.3d 1, 12 (D.C. Cir 2005).

Alibaba Group does not suggest that jurisdiction is appropriate in another state, and there is no question that both Alibaba Group and Alibaba have extensive contacts with the United States as a whole.[4]  Cepia alleges that Alibaba Group controls and/or is associated with a United States entity, Alibaba.com, Inc., that is devoted to marketing and expanding the reach of its websites in the United States.  *Id.,* ¶ 21.  This is confirmed in pleadings filed by Alibaba Group in *Earthstone International, LLC v. Alibaba Group Holding Limited d/b/a AliExpress and Alibaba .com* (N.D. Cal.).  *See* Exhibit 11.  There can be no doubt that Alibaba Group directs its websites to the United States market.[5]  *See also* Exhibit 14 (Alibaba webpage with arrows directed worldwide, including at the United States).  Therefore, even if the Court finds that Alibaba Group is not subject to jurisdiction here under the traditional minimum contacts analysis, Rule 4(k)(2) authorizes this court to exercise personal jurisdiction over Alibaba Group.

## VI.  Conclusion

For the foregoing reasons, the Court should deny Alibaba Group's Motion to Dismiss for Lack of Personal Jurisdiction.

---

[4] In July of 2010, Alibaba acquired Vendio Services, Inc., a transaction that, according to Alibaba, allowed Alibaba to gain access to more than 80,000 targeted small businesses in the United States.  In August of 2010, Alibaba acquired Auctiva Services, Inc., a United-States based Internet company with over 170,000 users that provides listing, marketing, hosting, and management services for online storefronts.  *See* news articles attached as Exhibit 10.

[5] In fact, Alibaba targeted a $30 million marketing campaign at the United States in 2009.  *See* Wall Street Journal Article, "Alibaba Plans U.S. Push", attached as Exhibit 12.  *See also* Reuters Article, "Alibaba eyes U.S. . . . for Growth," indicating that Alibaba had 2 million U.S. users in September 2010, attached as Exhibit 13.

Respectfully submitted,

**STINSON MORRISON HECKER LLP**

By:   */s/ Sandra J. Wunderlich*
Sandra J. Wunderlich, #39019MO
Andrew J. Scavotto, #57826MO
7700 Forsyth Boulevard, Suite 1100
St. Louis, Missouri  63105-1821
Telephone: (314) 863-0800
Facsimile: (314) 863-9388
E-mail: swunderlich@stinson.com
ascavotto@stinson.com

Penny R. Slicer, *pro hac vice*
1201 Walnut Street, Suite 2900
Kansas City, Missouri  64106-2150
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
E-mail: pslicer@stinson.com

ATTORNEYS FOR PLAINTIFF CEPIA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July, 2011 the foregoing instrument was electronically filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

  */s/ Sandra J. Wunderlich*
Attorney for Plaintiff Cepia, LLC

DB04/821953.0070/4688209.5